UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| DANIEL RUSK, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 2:24-cv-299-GMB |
| ) | |
| CITY OF BIRMINGHAM, ) | |
| ALABAMA, ) | |
| ) | |
| Defendant. ) | |

# MEMORANDUM OPINION AND ORDER

Daniel and Mary Rusk filed an amended complaint[1] against the City of Birmingham, Alabama ("the City") seeking equitable and injunctive relief relating to the City's charges against them for disorderly conduct. Doc. 2. Before the court is the City's motion to dismiss the Rusks' amended complaint under Federal Rule of Civil Procedure 12(b)(6), or alternatively motion for a more definite statement. Doc. 13. The parties have consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Doc. 15. For the reasons stated below, the City's motion to dismiss the amended complaint is due to be granted in part and denied in part, and the Rusks will have a final opportunity to remedy the deficiencies in their pleading. The City's alternative request for a more definite statement will

---

[1] The Rusks filed their amended complaint three days after the original complaint, attaching exhibits omitted from the original filing. *See* Doc. 2.

be denied.[2]

## I. RELEVANT FACTS

The following is a recitation of the relevant facts as alleged in the amended complaint.[3] On September 14, 2021, Daniel and Mary Rusk participated in street evangelism on sidewalks at or near the University of Alabama at Birmingham ("UAB") campus. Doc. 2 at 3. Daniel preached, Mary held signs, and both answered questions from listeners. Doc. 2 at 3. A crowd formed, and listeners "grew more rowdy." Doc. 2 at 3. At some point, a person in the crowd stole signs and a portfolio from Mary, then ran away. Doc. 2 at 4. Daniel ran to retrieve the stolen items, but during the pursuit an "angry female knocked [him] over" and "began beating him viciously." Doc. 2 at 4. Mary called to nearby police officers for help, but they arrested Daniel. Doc. 2 at 4. Mary videotaped Daniel's arrest and complained to the officers, who eventually arrested her instead. Doc. 2 at 4. The officers transported the Rusks to the Birmingham City Jail. Doc. 2 at 4. At the jail, the City detained the

---

[2] The preamble to the motion states that the City "moves this Court to dismiss and/or strike all claims" in the Rusks' Amended Complaint. Doc. 13 at 1. The arguments in the motion, however, are all grounds for dismissal of the claims, not reasons why the court should strike the complaint from its docket. To the extent the City is asking the court to strike the Rusks' pleadings, that request is DENIED.

[3] Both parties attach exhibits to their briefs, such as email correspondence and an incident report. As the parties note, "if [a district court] considers materials outside of the complaint, [it] must convert the motion to dismiss into a summary judgment motion," unless the extrinsic evidence is "(1) central to the plaintiff's claim, and (2) its authenticity is not challenged." *SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010). Because the evidence is not relevant to this decision, the court does not consider the email exchanges or the incident report at this time. *See* Docs. 13-1, 28-1, 32-1, 32-2, 32-3, 32-4 & 32-5.

Rusks and charged them with assault and inciting a riot. Doc. 2 at 5.  After four or five hours in custody, the City released them on bond. Doc. 2 at 5.

Eventually, the City reduced the charges against Daniel and Mary to disorderly conduct in violation of Alabama Code § 13A-11-7 and set their trial for January 2022. Doc. 2 at 6.  Two weeks before trial, the Rusks' attorney, Stephen Crampton, sent an email addressed to City Attorney Nicole King. Doc. 2 at 6; Doc. 2-1.  Crampton asked to "open discussions about dismissal of the charges" against the Rusks. Doc. 2 at 6; Doc. 2-1.  He also told King about a video captured by the Rusks during the incident that "will show that [the Rusks] simply engaged in protected First Amendment conduct. . . . [A]nd any violence was instigated by and engaged in solely by third parties, not [the Rusks]." Doc. 2-1.  Crampton at some point provided "a link to videotape evidence, which the prosecutor said he would review and then respond." Doc. 2 at 6.  The Rusks "never heard back from the prosecutor." Doc. 2 at 6.

The court continued the trial date to late April. Doc. 2 at 6.  In March, however, the City dismissed the charges against both of the Rusks. Doc. 2 at 6; Doc. 2-2; Doc. 2-3.  Even so, Daniel, Mary, and their attorney arrived for the April trial. Doc. 2 at 6.  When "[t]he prosecutor was . . . nowhere to be found," the Rusks' attorney asked the court clerk about the status of their case. Doc. 2 at 7.  It was at this point that "the clerk informed Plaintiffs and counsel for the first time that the

case had been dismissed." Doc. 2 at 7.

The Rusks filed this "civil rights action brought pursuant to 42 U.S.C. § 1983 challenging the actions" of the City, which "raises federal questions under the First, Fourth, and Fourteenth Amendments of the United States Constitution." Doc. 2 at 1. The amended complaint states two causes of action: (1) a violation of the Rusks' "Fourth Amendment Rights to be Free from Unreasonable Seizures and Malicious Prosecution," and (2) a violation of "the Alabama Religious Freedom Amendment." Doc. 2 at 11, 14.  In response, the City moved to dismiss the action. Doc. 13.  Among other arguments, the City claims that the Amended Complaint is an impermissible shotgun pleading. Doc. 13 at 5–8.  The court agrees.[4]

## II.  STANDARD OF REVIEW

When considering a Rule 12(b)(6) motion to dismiss, the court must view the allegations in the complaint in the light most favorable to the nonmoving party. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007).  To survive a motion to dismiss, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is "plausible on its face" if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

---

[4] Because the court finds that the complaint is an impermissible shotgun pleading, it will not address the City's other arguments at this time.

alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Factual allegations need not be detailed, but "must be enough to raise a right to relief above the speculative level," *id.*, and "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" will not suffice. *Iqbal*, 556 U.S. at 678.

Furthermore, the Federal Rules of Civil Procedure require that a complaint provide "a short and plain statement of the grounds for the court's jurisdiction." Fed. R. Civ. P. 8(a)(1). "Rule 8(a)(1) is satisfied if the complaint says enough about jurisdiction to create some reasonable likelihood that the court is not about to hear a case that it is not supposed to have the power to hear." *Scarborough v. Carotex Constr., Inc.*, 420 F. App'x 870, 873 (11th Cir. 2011) (quotation marks and citation omitted). Rule 8 also requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). And Rule 10(b) mandates "numbered paragraphs, each limited as far as practicable to a single set of circumstances," and that "each claim founded on a separate transaction or occurrence . . . be stated in a separate count or defense." The "self-evident" purpose of these rules is "to require the pleader to present his claims discretely and succinctly, so that . . . his adversary can discern what he is claiming and frame a responsive pleading." *Weiland v. Palm Beach County Sheriff's Off.*, 792 F.3d 1313, 1320 (11th

Cir. 2015) (quotation marks and citation omitted).

The Eleventh Circuit has "little tolerance for shotgun pleadings." *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018). In fact, it has "roundly condemned such shotgun pleadings, both for the confusion they cause litigants and the havoc they wreak on the docket." *McCall v. Bank of Am., N.A.*, 2016 WL 5402748, at *1 (M.D. Ala. Sept. 26, 2016). And "[a] district court has the inherent authority to control its docket and ensure the prompt resolutions of lawsuits, which includes the ability to dismiss a complaint on shotgun pleading grounds." *Vibe Micro Inc.*, 878 F.3d at 1295 (internal quotation marks and citation omitted); *see also Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1357 (11th Cir. 2018). However, the pleading party should have at least one chance to remedy deficiencies before a dismissal with prejudice on shotgun pleading grounds. *Vibe Micro, Inc.*, 878 F.3d at 1295; *Jackson*, 898 F.3d at 1358.

### III. DISCUSSION

A pleading that does not comply with the specificity requirements of the Federal Rules of Civil Procedure—particularly those in Rules 8 and 10—is known as a shotgun pleading. *See Weiland*, 792 F.3d at 1320. While there is no precise formula or checklist for what makes a shotgun pleading, a complaint might earn this label if it: (a) includes multiple counts that each adopt the allegations of all preceding counts; (b) contains "conclusory, vague, and immaterial facts not obviously

connected to any particular cause of action"; (c) fails to divide different claims into separate counts; or (d) alleges "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Id.* at 1322–23. "The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* at 1323. At the end of the day, the key question is "whether [the complaint] includes enough information to allow a defendant and the court to 'readily determine' if it states a plausible claim for relief." *Ray v. Gadson*, 2023 WL 7228933, at *4 (N.D. Ala. Nov. 2, 2023) (citing *Weiland*, 792 F.3d at 1326). The amended complaint falls short of this basic standard.

**A.     Pleading Defects**

The Rusks' amended complaint constitutes a shotgun pleading as defined in *Weiland*. Because the complaint "is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action," it falls under the second category[5] of shotgun complaints described

---

[5] The City argues that the complaint also falls under the third category of shotgun pleadings in *Weiland* (Doc. 13 at 6–7) because the first cause of action seems to allege multiple claims against the City in one count. The court disagrees and construes the first cause of action to raise a single Fourth Amendment malicious prosecution claim brought under 42 U.S.C. § 1983.

in *Weiland*, 792 F.3d at 1322.  The court finds that the complaint lacks clarity for the following reasons: (1) it details actions taken by UAB police officers, who are not employed by the City; (2) when it does mention actions taken by City officials, it does so in a conclusory and unsupported fashion; (3) it treats the action as arising from the First Amendment without including a First Amendment cause of action; and (4) it does not properly categorize its claim under the Alabama Religious Freedom Amendment ("ARFA"), leaving the court unable to discern what the claim is and whether it may exercise jurisdiction over the claim.

The Rusks' complaint describes, in detail, actions taken by unidentified police officers between the time of arrest and booking at the Birmingham City Jail. Doc. 2 at 3–7, 9–13.  More specifically, it claims that the officers did not intervene when spectators verbally and physically harassed the Rusks, that officers "hotboxed" the Rusks after arresting them without probable cause, and that policemen in the same area have acted similarly towards the Rusks on two unrelated occasions. *See* Doc. 2 at 3–6, 9–11.  But the City maintains that these unidentified officers are members of the UAB Police Department ("UABPD"), which is not an entity subject to the City's control and not a party to this action. Doc. 13 at 2, 8.  The Rusks do not deny this assertion. Doc. 27 at 12 & n.4.  Because it does not connect UABPD's actions with the Rusks' claims against the City, the complaint qualifies as a "quintessential 'shotgun' pleading, replete with factual allegations that could not possibly be

8

material to any of the causes of action [Plaintiffs'] assert." *Pelletier v. Zweifel*, 921 F.2d 1465, 1518 (11th Cir. 1991).

When the Rusks do mention the City in their complaint, they do so in a conclusory fashion that amounts to "threadbare recitals of the elements of a cause of action," *Iqbal*, 556 U.S. at 678, without any factual support for their allegations. For example, the Rusks assert in their Fourth Amendment claim for malicious prosecution that "[t]he detention and prosecution of Plaintiffs by the City was undertaken with malice and without probable cause," and that "[t]he detention and prosecution of Plaintiffs by the City were ratified by the City's policymakers." Doc. 2 at 12-13. The Rusks do not clearly identify the City's alleged policymakers or describe the ratification process.

Instead, the Rusks spend a large amount of time explaining their First Amendment right to free speech but never state a claim for a violation of the First Amendment. Specifically, they claim that their suit "raises federal questions under the First, Fourth, and Fourteenth Amendments" (Doc. 2 at 2), and while relying on First Amendment caselaw allege that the "public sidewalks on which Plaintiffs engaged their audience are quintessential public fora," which are protected by the First and Fourteenth Amendments; the City "manifested hostility to the content of Plaintiffs' message"; and the City "knew full well that Plaintiffs' only offense was the content of their speech." Doc. 2 at 8–10. With these allegations but without a

cause of action under the First Amendment, the complaint reads more like a "narrative suggesting, but not clearly and simply stating, a myriad of potential claims" that vary in both constitutional bases and potential forms of relief. *Giles v. Wal-Mart Distrib. Ctr.*, 359 F. App'x 91, 93 (11th Cir. 2009).

Finally, the complaint's failure to classify its ARFA claim further demonstrates the pleading's deficiencies. The complaint states that it is "a civil rights action brought pursuant to 42 U.S.C. § 1983," that the Rusks seek relief for the City's "infringement of Plaintiffs' fundamental religious freedoms," and that the court "has jurisdiction over the federal claims under 28 U.S.C. §§ 1331 and 1343." Doc. 2 at 1–2. These allegations beg the question of whether the Rusks bring this claim under § 1983 or if they intend for the court to exercise supplemental jurisdiction over the claim under 28 U.S.C § 1367(a).[6] Thus, the City lacks "adequate notice of the claims against them and the grounds upon which each claim rests," *Weiland*, 792 F.3d at 1323, and the complaint fails to "say[] enough about jurisdiction to create some reasonable likelihood that the court is not about to hear a case that it is not supposed to have the power to hear." *Scarborough*, 420 F. App'x at 873.

For all these reasons, the court finds that the Amended Complaint falls short

---

[6] The Rusks' response to the motion to dismiss (*see* Doc. 28 at 15, 27, 30) does not resolve this confusion.

of the standards of Federal Rules of Civil Procedure 8 and 10. Accordingly, the motion to dismiss is due to be granted.

## B. Opportunity to Remedy

The court will allow the Rusks an opportunity to cure the inadequacies of their pleading. The court, however, emphasizes the importance of adhering to the instructions in this order. For example, the second amended complaint must allege precise factual allegations to support its claims against the City, and it must clarify the basis for bringing the ARFA claim to federal court. The second amended complaint must be filed as a standalone pleading and must not reference or incorporate any other pleadings. Absent extraordinary circumstances, the Rusks will not receive another opportunity to resolve their deficient pleadings before a dismissal with prejudice. *See Cromartie v. Julia Tutwiler Prison for Women*, 2022 WL 950940, at *3–4 (11th Cir. Mar. 20, 2022) (upholding district court's dismissal of second amended complaint with prejudice as an impermissible shotgun pleading where claimant continually failed to remedy the procedural defects in her complaint).

## IV. CONCLUSION

For these reasons, it is ORDERED that the City's motion (Doc. 13) is GRANTED in part and DENIED in part:

1. The City's motion to dismiss the amended complaint (Doc. 13) is

GRANTED, and the amended complaint (Doc. 2) is DISMISSED without prejudice.

1. The City's alternative motion for a more definite statement is DENIED.

3. On or before **December 3, 2024,** the Rusks shall file a second amended complaint consistent with the directions in this order.

DONE and ORDERED on November 12, 2024.

_____
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE