UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| DANIEL RUSK, *et al.*, | ) |
| Plaintiffs, | ) |
| v. | ) Case No. 2:24-cv-299-GMB |
| CITY OF BIRMINGHAM, ALABAMA, | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Daniel and Mary Frances Rusk bring claims pursuant to 42 U.S.C. § 1983 and state constitutional law against the City of Birmingham, Alabama. Doc. 36. The parties have consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Doc. 15. Before the court is the City's motion to dismiss the Rusks' second amended complaint[1] under Federal Rules of Civil Procedure 8 and 12(b)(6). Doc. 39. The motion is fully briefed (Docs. 39, 41 & 42) and ripe for decision. For the following reasons, the motion is due to be granted.

**I. STANDARD OF REVIEW**

Federal Rule of Civil Procedure 12(b)(6) authorizes the dismissal of some or

---

[1] The Rusks label this complaint as their "Verified Third Amended Complaint for Civil Rights Violations, Declaratory Judgment, and Damages." Doc. 36. Because only two complaints precede this one (Docs. 1 & 2), this opinion will describe the operative complaint as the second amended complaint, as the parties do in their briefs. *See* Doc. 39 at 1 n.1; Doc. 41 at 1 n.1.

all of the claims in a complaint if the allegations fail to state a claim upon which relief may be granted. Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," which is designed to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). The court assumes that the factual allegations in the complaint are true and gives the plaintiff the benefit of all reasonable factual inferences. *Hazewood v. Foundation Fin. Grp., LLC*, 551 F.3d 1223, 1224 (11th Cir. 2008). However, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009) ("Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."). Nor is it proper to assume that a plaintiff can prove facts she has not alleged or that the defendants have violated the law in ways that have not been alleged. *Twombly*, 550 U.S. at 563 n.8 (citing *Assoc. Gen. Contractors of Cal., Inc. v. Carpenters*, 459 U.S. 519, 526 (1983)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic

recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations, brackets, and internal quotation marks omitted). "Factual allegations must be enough to raise a right to relief above the speculative level. . . ." *Id*. Thus, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *i.e.*, its "factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citations omitted).

Generally, a court looks only to the face of the complaint when deciding a Rule 12(b)(6) motion. "When a court considers matters outside of the pleadings in a [Rule] 12(b)(6) motion to dismiss, the court converts that motion into a motion for summary judgment." *Johnson v. Unique Vacations, Inc.*, 498 F. App'x 892, 894 (11th Cir. 2012). Consequently, "the court is ordinarily barred from considering facts not alleged in the complaint or documents attached to a motion to dismiss." *Roberts v. Carnival Corp.*, 824 F. App'x 825, 826 (11th Cir. 2020). A court may consider an extrinsic document without converting the motion only if it is "(1) central to the plaintiff's claim, and (2) its authenticity is not challenged." *SFM Holdings, LTD. v. Banc of Am. Sec., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010); *see Roberts*, 824 F. App'x at 826–27 (holding that the district court improperly relied on documents attached to a motion to dismiss because they were unnecessary, inessential, and had "little to do with the substance of [plaintiff's] claims").

Here, the City attaches nine Birmingham Municipal Court documents to its motion. Docs. 39-1 to -9. These documents include, for example, the municipal court's notices of continuances for the Rusks' trial and orders dismissing the Rusks' criminal charges. Docs. 39-1, 39-2, 39-4 & 39-5. The City's exhibits do little more than support the Rusks' own factual allegations, which the court accepts as true. *See Iqbal*, 556 U.S. at 678. For this reason, the documents are unnecessary at the motion-to-dismiss stage. *See Roberts*, 824 F. App'x at 826–27. In addition, the Rusks challenge the authenticity of all nine documents. Doc. 41 at 6 n.2. As a result, the court has not considered any of the extrinsic documents attached to the City's motion to dismiss.

## II. STATEMENT OF FACTS

On September 14, 2021, Daniel and Mary Rusk participated in street evangelism on sidewalks near the University of Alabama at Birmingham ("UAB") campus. Doc. 36 at 2. Daniel preached, his wife held signs, and both answered questions from the growing crowd as UAB police officers stood by. Doc. 36 at 2–3. After someone in the crowd stole and ran off with a sign, Daniel went to retrieve the stolen item. Doc. 36 at 3. During his pursuit, a woman in the crowd knocked him over and began to beat him. Doc. 36 at 3. UAB police officers approached and arrested Daniel instead of arresting "the aggressors and thieves." Doc. 36 at 3. Mary videotaped the arrest and "complained to the officers that they should not have

arrested Daniel." Doc. 36 at 3. After first attempting to block Mary's view, a UAB police officer eventually arrested her as well. Doc. 36 at 3.

The UAB officers transported the Rusks to the Birmingham City Jail, "where they were booked and detained by the City." Doc. 36 at 3. They were "released from City custody after four to five hours on the condition of posting a cash bond in the amount of $365.15 each." Doc. 36 at 3. While in custody, City police officers "mocked [the Rusks] and their religion, cussing at them, waving their signs around, and mockingly saying they wanted to join their church." Doc. 36 at 4.

The City "initially charged [the Rusks] with inciting a riot and assault," but eventually reduced the charges to disorderly conduct in violation of Alabama Code § 13A-11-7 and set the trial for January 2022. Doc. 36 at 4. Before trial, the Rusks' attorney contacted the City Attorney and sent her a link to videotape evidence that "demonstrat[ed] beyond cavil that [the Rusks] committed no crime." Doc. 36 at 4. A City prosecutor told the Rusks he would review the video and then respond, but the Rusks "never heard back from the prosecutor." Doc. 36 at 4.

In the meantime, the court continued the trial date to April 2022, then dismissed the charges about a month before trial. Doc. 36 at 4. Even so, Daniel, Mary, and their attorney arrived for the April trial. Doc. 36 at 4. When "[t]he prosecutor was . . . nowhere to be found," the Rusks' attorney asked the court clerk about the status of their case. Doc. 36 at 4. It was at this point that "the clerk

5

informed Plaintiffs and counsel for the first time that the case had been dismissed." Doc. 36 at 4.

### III.  PROCEDURAL HISTORY

Based on these events, the Rusks filed a complaint against the City, which they quickly amended to include exhibits. Docs. 1 & 2.  The City then moved to dismiss the amended complaint. Doc. 13.  Among other arguments, the City claimed that the amended complaint was an impermissible shotgun pleading. Doc. 13 at 5–8.  The court agreed. Doc. 35.  Accordingly, it granted the City's motion to dismiss the amended complaint on shotgun pleading grounds but gave the Rusks an opportunity to cure the inadequacies of their pleading. Doc. 35.

The Rusks' second amended complaint followed. Doc. 36.  In it, the Rusks state two causes of action against the City. *See* Doc. 36 at 6–8.  The first count is a 42 U.S.C. § 1983 claim, in which they allege that the City is liable for malicious prosecution because the City Attorney, a policymaker for the City, continued to prosecute the Rusks even after she "was apprised of the unlawful arrest and detention of Plaintiffs when counsel for Plaintiffs wrote her" in January 2022. Doc. 36 at 6–7. The second claim is for a violation of the Alabama Religious Freedom Amendment ("ARFA") to the Alabama Constitution by burdening the Rusks' freedom of religion. Doc. 36 at 7–8; *see* Ala. Const. art I, § 3.01.  The City again moved to dismiss these claims. Doc. 39.

## IV.  DISCUSSION

In its motion, the City seeks the dismissal of the second amended complaint for multiple reasons.  The City first argues that the second amended complaint should be dismissed as a shotgun pleading under Federal Rules of Civil Procedure 8 and 10. Doc. 39 at 5–11.  The court begins with the shotgun pleading argument and then discusses the City's remaining arguments for the dismissal of both causes of action.

### A.   Shotgun Pleading

A complaint, answer, or counterclaim that fails to comply with certain specificity requirements of the Federal Rules of Civil Procedure—particularly Rules 8 and 10—is known as a shotgun pleading. *See Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1320 (11th Cir. 2018).  While there is no precise formula for a shotgun pleading, a complaint might earn this label if it (a) includes multiple counts that each adopt the allegations of all preceding counts; (b) contains "conclusory, vague, and immaterial facts" unconnected to a particular cause of action; (c) fails to divide different claims into separate counts; or (d) alleges "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Weiland v. Palm Beach County Sheriff's Off.*, 792 F.3d 1313, 1322–23 (11th Cir. 2015). "The unifying characteristic of all types of shotgun pleadings is that they fail to one degree

or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id*. at 1323. "At the end of the day . . . the key question is whether the complaint includes enough information to allow a defendant and the court to 'readily determine' if the complaint states a plausible claim for relief." *Ray v. Gadson*, 2023 WL 7228933, at *4 (N.D. Ala. Nov. 2, 2023) (citing *Weiland*, 792 F.3d at 1326).

Upon review of the second amended complaint, the court disagrees with the City's characterization that it is a shotgun pleading. *See* Doc. 39 at 5–11. The complaint allows for the City to understand the claims stated against it. And while many of the Rusks' allegations in support of their claims are conclusory or immaterial, the federal rules do not require precision in the drafting of complaints. The causes of action and factual allegations here give adequate notice to the City of the factual basis for the Rusks' claims against them, and for that reason the court will not dismiss the second amended complaint on shotgun-pleading grounds.

**B.  Malicious Prosecution Claim**

Next, the City seeks the dismissal of the § 1983 malicious prosecution claim, arguing the Rusks fail to state a claim upon which relief may be granted. Doc. 39 at 11–21; *see* Fed. R. Civ. P. 12(b)(6). The court agrees that the Rusks have not

plausibly alleged the elements of a § 1983 malicious prosecution claim.[2]

A malicious prosecution claim generally requires a plaintiff to allege (1) the elements of the common-law tort of malicious prosecution and (2) a violation of his Fourth Amendment right to be free from unreasonable seizures pursuant to legal process. *See Laskar v. Hurd*, 972 F.3d 1278, 1284 (11th Cir. 2020). The common-law elements of a malicious prosecution claim under both federal and Alabama law are (1) that the defendant instituted criminal process against the plaintiff with malice and without probable cause, (2) that the broader prosecution terminated in the plaintiff's favor, and (3) the prosecution caused damage to the plaintiff. *Wood v. Kesler*, 323 F.3d 872, 882 (11th Cir. 2003). The Eleventh Circuit has recognized, however, that "significant overlap exists between these requirements." *Luke v. Gulley*, 975 F.3d 1140, 1143–44 (11th Cir. 2020) ("If a plaintiff establishes that a defendant violated his Fourth Amendment right to be free from seizures pursuant to legal process, he has also established that the defendant instituted criminal process against him with malice and without probable cause."). Accordingly, the Eleventh Circuit recently streamlined the *prima facie* malicious prosecution claim to require only two elements: (1) that the defendant violated the plaintiff's "Fourth

---

[2] The City raises several other arguments for dismissing the malicious prosecution claim. *See* Doc. 39 at 24–25, 28–30. The court finds dismissal to be appropriate under Rule 12(b)(6), so it will not address the City's other arguments.

Amendment right to be free from seizures pursuant to legal process," and (2) "that the criminal proceedings against [the plaintiff] terminated in his favor." *Id.* at 1144; *see Davis v. Distefano*, 2025 WL 568072, at *15 (N.D. Ala. Feb. 20, 2025). As a result, the common-law elements of a malicious prosecution claim will simply guide, and not control, the § 1983 malicious prosecution analysis. *Washington v. Howard*, 25 F.4th 891, 898 (11th Cir. 2022); *Williams v. Aguirre*, 965 F.3d 1147, 1157 (11th Cir. 2020).

Because the second element is straightforward in this case, the court will begin there. "To demonstrate a favorable termination of a criminal prosecution for purposes of the Fourth Amendment claim under § 1983 for malicious prosecution, a plaintiff need only show that his prosecution ended without a conviction." *Thompson v. Clark*, 596 U.S. 36, 39 (2022); *see Laskar*, 972 F.3d at 1295 ("[T]he favorable-termination element requires only that the criminal proceedings against the plaintiff formally end in a manner not inconsistent with his innocence."). The Rusks adequately allege this element in their complaint when they state that the City dismissed the charges against them on March 8, 2022. *See* Doc. 36 at 4.

The first element is not so simple. A § 1983 malicious prosecution claim requires the plaintiff to prove that the defendant violated his Fourth Amendment right to be free from seizures pursuant to legal process. *Luke*, 975 F.3d at 1143–44. Not just any seizure is actionable; the relevant injury for a § 1983 malicious

10

prosecution claim is the seizure that follows the commencement of legal process. *Laskar*, 972 F.3d at 1297 (11th Cir. 2020); *see Williams*, 965 F.3d at 1167 (explaining that the injury in a § 1983 malicious prosecution claim is the seizure authorized by legal process and not "the broader prosecution"). "'[W]arrant-based seizures' as well as 'seizures following an arraignment, indictment, or probable cause hearing' qualify as seizures pursuant to legal process." *McAffee v. City of Clearwater*, 2023 WL 2823392, at *2 (11th Cir. Apr. 7, 2023) (quoting *Kingsland v. City of Miami*, 382 F.3d 1220, 1235 (11th Cir. 2004)).

A malicious prosecution claim therefore differs from a false arrest claim, which concerns a seizure without legal process like a warrantless arrest. *Williams*, 965 F.3d at 1162–63 ("Although the lawfulness of a warrantless arrest turns on whether the arresting officer had probable cause, the lawfulness of seizures pursuant to legal process turns on the validity of the legal process itself."). In fact, a warrantless arrest "cannot serve as the predicate deprivation of liberty" in a malicious prosecution claim. *Kingsland*, 382 F.3d at 1235, *abrogated on other grounds by Williams*, 965 F.3d at 1159–62. "[W]hen there is a warrantless arrest, 'the judicial proceeding does not begin until the party is arraigned or indicted.'" *Donley v. City of Morrow, Ga.*, 601 F. App'x 805, 813 (11th Cir. 2015) (quoting *Kingsland*, 382 F.3d at 1235).

For these reasons, the malicious prosecution plaintiff cannot survive a Rule

11

12(b)(6) challenge unless she pleads that the defendant's actions resulted in a seizure on a warrant or after an arraignment, indictment, or probable-cause hearing. For example, the Eleventh Circuit affirmed the dismissal of a § 1983 malicious prosecution claim in *McAffee*, 2023 WL 2823392, at *3. The *McAfee* plaintiff claimed that he was standing on his front lawn when two officers charged toward him and arrested him for resisting arrest even though he did nothing to interfere with them. *Id.* at *1. Based on the officers' reports, the plaintiff was charged in state court for resisting an officer. *Id.* After a few months, however, the state prosecutor dismissed the case. *Id.* The district court dismissed the resulting malicious prosecution claim because the only alleged seizure—the plaintiff's arrest—occurred before the judicial proceedings began. *Id.* at *2. The Eleventh Circuit affirmed the dismissal, explaining that the complaint lacked any allegation that the plaintiff was arrested on a warrant or seized following an arraignment, indictment, or probable cause hearing, so "there was no allegation that any seizure occurred after the commencement of the state judicial proceedings" as required for a § 1983 malicious prosecution claim. *Id.* at *3.

Relying on *McAffee*, the court in *Barnett v. Elsmore*, 2023 WL 5070317, at *5–7 (S.D. Fla. July 14, 2023), reached the same conclusion. In *Barnett*, the plaintiff alleged that (1) he was seized during a warrantless arrest; (2) he underwent a "demeaning" and stressful booking process; (3) he was released on bond 24 hours

later; (4) an information was filed against him and he was arraigned within the next month; and (5) his charges were dismissed after a year and a half. *Id.* at *2, 6. The complaint did not claim that he was rearrested after the information and arraignment or identify "any conditions of pretrial release under his bond that amounted to a significant, ongoing deprivation of liberty." *See id.* at *6. Considering these facts, the district court observed that "a claim for malicious prosecution in violation of the Fourth Amendment generally cannot be based on a warrantless arrest where the plaintiff is released on bond prior to arraignment, as is the case here." *Id.* at *5. For this reason, the court dismissed the plaintiff's § 1983 malicious prosecution claim. *Id.* at *7 (explaining that the plaintiff's complaint "appears to assert a Fourth Amendment violation giving rise to a false arrest claim under Section 1983" rather than a malicious prosecution claim).

Here, the Rusks predicate their malicious prosecution claim against the City on the same type of "bondable, pre-arraignment warrantless arrest" rejected in *Barnett*, *id.* at *5. They allege that (1) UAB police officers arrested them without probable cause and took them to jail; (2) City of Birmingham police officers booked them and detained them for four to five hours before releasing them on bond; and (3) the City charged them with inciting a riot and assault but later reduced, and eventually dismissed, the charges. Doc. 36 at 3–4. And the Rusks admit in their brief in response to the motion to dismiss that "UAB police transported [them] to the

City jail for processing and ultimate prosecution by the City," and that "[s]uch was the legal process here." *See* Doc. 41 at 20 n.7.

Even if the City "processed" and "ultimately prosecuted" them, the Rusks have not identified any seizure that occurred after a warrant, indictment, arraignment, or probable cause hearing. Instead, the complaint makes clear that the Rusks' arrest and same-day detention are the only seizures at issue since the City did not rearrest the Rusks after they bonded out. This means that the relevant seizures occurred before the commencement of "judicial proceedings." *McAffee*, 2023 WL 2823392, at *2. Under Eleventh Circuit law, the lack of any seizure during the judicial phase of the criminal case is fatal to the Rusks' claim for malicious prosecution.

The Rusks argue that they are entitled to relief anyway because they were "indisputably prosecuted" and "lived under the cloud of a prosecution for months." Doc. 41 at 20. The Rusks are not the first plaintiffs to advance this type of "continuing seizure" theory, but the Eleventh Circuit has concluded that facts like these do not support a § 1983 malicious prosecution claim. In fact, the Eleventh Circuit has made clear that "the normal conditions of pretrial release, such as bond and a summons to appear, do not constitute a seizure 'barring some significant, ongoing deprivation of liberty, such as a restriction on the defendant's right to travel interstate.'" *Donley v. City of Morrow, Ga.*, 601 F. App'x 805, 813 (11th Cir. 2015)

(quoting *Kingsland*, 382 F.3d at 1236).

Two recent Eleventh Circuit decisions illustrate this principle. In *Kingsland*, 382 F.3d at 1223–25, officers conducted a warrantless arrest of the driver of a rental truck and transported her to the county jail where she was charged with a DUI. The driver's father posted her bond the following day. *Id.* at 1225. The driver had to appear in court for her arraignment and then travel from New Jersey to Florida for two additional appearances. *Id.* at 1225, 1236. After the court granted her motion to dismiss the criminal charges against her, she brought a § 1983 malicious prosecution claim against the city and the arresting officers. *Id.* at 1225. The district court granted summary judgment in favor of the defendants, and the Eleventh Circuit held that the conditions of the driver's pretrial release—that she post bond and travel interstate to appear for criminal proceedings—were not a significant deprivation of her liberty. *Id.* at 1235–36. The driver therefore could not prove a "continuing seizure for Fourth Amendment purposes," so she did not have a cognizable malicious prosecution claim. *Id.*

Similarly, in *Donley*, 601 F. App'x at 806, a municipal police officer conducted an inspection at a restaurant while one of the restaurant's owners was present. The officer arrested the owner without a warrant, took him to the police station, and cited him for a series of city-ordinance violations. *Id.* The owner spent three days in jail until his release on a signature bond with instructions to report for

15

his arraignment a few weeks later. *Id.* at 806–07. During the life of his case, he traveled from Indiana to Georgia to appear at various municipal court proceedings before the dismissal of his charges a few months later. *Id.* at 814.

The Eleventh Circuit affirmed the district court's dismissal of the restaurant owner's § 1983 malicious prosecution against the city. *Id.* at 813–14. The court, relying on *Kingsland*, 382 F.3d at 1223–25, held that the plaintiff did not suffer a Fourth Amendment seizure after judicial proceedings began in the municipal court prosecution. *Donley*, 601 F. App'x at 813–14. The court explained that the owner's complaint—which alleged that he was arrested pursuant to a warrantless arrest, was not detained after his arraignment, and had to post bond and travel to attend municipal court proceedings—did not allege a § 1983 malicious prosecution claim. *Id.* Because "the municipal court proceedings did not subject [him] to any significant deprivation of liberty," he "was not seized under the Fourth Amendment." *Id.* at 814.

The Rusks' continuing seizure theory mirrors the claims in *Kingsland* and *Donley*. The City of Birmingham's requirements that the Rusks post bond and appear for future proceedings are normal conditions of pretrial release that do not constitute a seizure violative of the Fourth Amendment. *See* Doc. 36 at 4–6; *Donley*, 601 F. App'x at 813. And the existence of a pending prosecution, even if it created apprehension or inconvenienced the Rusks, does not plausibly allege that the City

deprived them of constitutional liberty interests. *See Kingsland*, 382 F.3d at 1236 ("While we sympathize with Kingsland's anxiety and inconvenience, assuming the facts in her complaint to be true, we cannot go so far as to say the conditions of her pretrial release—which did not constitute a significant deprivation of liberty—constituted a seizure violative of the Fourth Amendment.").

The Rusks' complaint does not state a cognizable § 1983 malicious prosecution claim because it does not plausibly allege that the City violated their Fourth Amendment right to be free from seizures pursuant to legal process. For these reasons, their § 1983 malicious prosecution claim is due to be dismissed.

**C.     Alabama Religious Freedom Amendment Claim**

The Rusks also allege that the City violated Article I, Section 3.01 of the Alabama Constitution by burdening their exercise of religion. Doc. 36 at 7–8. The City urges the court to decline to exercise jurisdiction over this claim.[3] Doc. 39 at 23–24.

The court has original jurisdiction over the Rusks' § 1983 claim pursuant to 28 U.S.C. § 1331. As the result of its original jurisdiction over these claims, the court could exercise supplemental jurisdiction over the state-law claim pursuant to

---

[3] Like with the malicious prosecution claim, the City raises several other arguments in support of the dismissal of the ARFA claim. *See* Doc. 39 at 22–30. Because the court declines to exercise jurisdiction over this claim, it will not address the City's remaining arguments.

28 U.S.C. § 1367(a).  Under § 1367(c), however, the court may decline to exercise supplemental jurisdiction if it dismisses all claims over which it has original jurisdiction.  And the "dismissal of state law claims [is] strongly encouraged when federal law claims are dismissed prior to trial." *Baggett v. First Nat'l Bank*, 117 F.3d 1342, 1353 (11th Cir. 1997) (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.")).  Consistent with the Eleventh Circuit's guidance and finding no substantial federal interests to be served by retaining supplemental jurisdiction, the court declines to exercise jurisdiction over the Rusks' ARFA claim.

**D.    Leave to Amend**

Although the allegations of the complaint are insufficient, a district court's discretion to dismiss a complaint without granting leave to amend "is severely restrict[ed]" by Federal Rule of Civil Procedure 15(a), "which directs that leave to amend 'shall be freely given when justice so requires.'" *Thomas v. Town of Davie*, 847 F.2d 771, 773 (11th Cir. 1988) (internal quotation marks and citation omitted).  Where a more carefully drafted pleading might state a viable claim, a district court should allow the plaintiff at least one chance to amend the complaint before dismissing the action with prejudice. *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001).

But a district court need not allow an amendment where (1) "there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies" through prior amendments; (2) amending the complaint would prejudice the opposing party; or (3) "amendment would be futile." *Id.*; *see Johnson v. Broussard*, 2017 WL 2687464, at *6–7 (N.D. Ala. June 22, 2027) ("There is no reason to require defendants to expend additional time and money defending claims that cannot possibly succeed."). "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject for relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

The Rusks filed their second amended complaint after the court dismissed their amended complaint on shotgun-pleading grounds. Docs. 35 & 36. The court finds that it would be futile to allow the Rusks another attempt to amend their § 1983 malicious prosecution claim when the second amended complaint makes clear that the Rusks were not arrested on a warrant or subjected to a seizure pursuant to legal process. Because the facts and circumstances of the Rusks' arrest and prosecution cannot support a § 1983 malicious prosecution claim, the court dismisses this claim with prejudice. *See Foman*, 371 U.S. at 182.

## IV. CONCLUSION

For these reasons, it is ORDERED that the Motion to Dismiss (Doc. 39) is GRANTED as follows:

1. The Rusks' 42 U.S.C. § 1983 malicious prosecution claim is DISMISSED with prejudice.

2. The court DECLINES to exercise supplemental jurisdiction over the ARFA claim and it is DISMISSED without prejudice.

3. The Clerk of Court is DIRECTED to close this case.

DONE and ORDERED on May 12, 2025.

_____
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE